### In re SOUTHEAST BANKING CORPORATION, Debtor.

**CHEMICAL BANK, as Indenture Trustee Under the Indenture dated as of March 1, 1983, of Southeast Banking Corporation, and Gabriel Capital, L.P., Appellants,**

v.

**FIRST TRUST OF NEW YORK, NAT'L ASSOCIATION, as Indenture Trustee, the Bank of New York, as Indenture Trustee, and Southeast Banking Corporation, Debtor, Appellees.**

No. 95–2045–CIV.

United States District Court, S.D. Florida.

Feb. 28, 1997.

---

684

Phillip M. Hudson, III, Kelley, Drye & Warren, Miami, FL, Sarah Reid, David C. Cimo, Kelly, Drye & Warren, New York, NY, for Appellant Chemical Bank, as Indenture Trustee.

Paul J. McMahon, Schulte, Blum, McMahon, Joblove & Haft, Miami, FL, David M. Friedman, David S. Rosner, Kasowitz, Benson, Torres & Friedman, New York, NY, for Appellant Gabriel Capital, L.P.

Francis L. Carter, Janie L. Anderson, Coll Davidson Carter, Miami, FL, Charles R. Hager, Dewey Ballantine, New York, NY, for Indenture Trustees First Trust of New York and Bank of New York.

Mark D. Bloom, Greenberg Traurig, Miami, FL, for Southeast Banking Corporation.

## ORDER AFFIRMING FINAL JUDGMENT OF THE BANKRUPTCY COURT

MORENO, District Judge.

This Bankruptcy Appeal involves the effect of 11 U.S.C. § 510(a) on the enforcement of subordination agreements in bankruptcy proceedings. After conducting a *de novo* review, the Court agrees with the Bankruptcy Court that Section 510(a) does not change the standard bankruptcy practice that post-petition interest and post-petition fees and costs will not be subordinated absent explicit language to that effect in the indenture.

### FACTUAL BACKGROUND

#### A. *Southeast's Bankruptcy*

Or September 20, 1991 (the "Petition Date"), Southeast Banking Corporation ("Southeast" or the "Debtor") filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code"). On April 14, 1992, William A. Brandt, Jr. was elected as successor Chapter 7 trustee pursuant to Sections 702 and 703 of the Bankruptcy Code. On April 28 1992, the Court confirmed Brandt's election as Chapter 7 trustee.

#### B. *The Senior Indentures*

Appellant Chemical Bank became the Senior Indenture Trustee upon the merger of Manufacturers Hanover Trust Company into Chemical Bank. Chemical Bank is the Senior Indenture Trustee under the following Indenture:

Indenture, dated as of March 1, 1983 (the "Senior Indenture"), between Southeast Banking Corporation and Manufacturers Hanover Trust Company, Trustee.

Appellant Gabriel Capital together with three of its affiliates, is the beneficial owner of a significant percentage of the outstanding senior debentures.

The Senior Indenture provides, *inter alia,* the continuing obligation to pay principal and interest on the Senior Notes:

[Southeast] covenants and agrees for the benefit of the holders of each series of [Senior Notes] that it will duly and punctually pay or cause to be paid the principal of, and interest on, each of the [Senior Notes] of such series at the place or at the respective times and in the manner provided in such [Senior Notes].

The Senior Indenture also provides that in the event of default:

[Southeast] will pay to the [Senior] Trustee for the benefit of the Holders of the [Senior Notes] of such series the whole amount that then shall have become due and payable on all [Senior Notes] of such series for principal or interest, as the case may be (with interest to the date of such payment upon the overdue principal and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest at the same rate as the rate of interest ... specified in the [Senior Notes] of such series); and in addition thereto, such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to the [Senior] Trustee and each predecessor trustee, their respective agents, attorneys and counsel, and all advances made, by the [Senior] Trustee and each predecessor trustee except as a result of its negligence or bad faith.

#### C. *The Indenture Trustees*

Appellee The Bank of New York is the Indenture Trustee under the following two Indentures:

(1) Indenture, dated as of October 15, 1972, between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $35,000,000 4 3/4% Convertible Subordinated Debentures Due 1997.

(2) Indenture, dated as of March 15, 1989, between Southeast Banking Corporation and Irving Trust Company, Trustee, providing for the issuance of Subordinated Debt Securities.

Appellee First Trust of New York, successor in interest to Morgan Guaranty Trust Company of New York, is the Indenture Trustee under the following three Indentures:

(1) Indenture dated as of December 1, 1984, between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $75,000,000 Floating Rate Subordinated Notes Due 1996.

(2) Indenture, dated as of November 1, 1985, between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $75,000,000 Floating Rate Subordinated Capital Notes Due 1997.

(3) Indenture, dated as of April 1, 1987, between Southeast Banking Corporation and Morgan Guaranty Trust Company of New York, Trustee, providing for the issuance of $50,000,000 6 1/2% Convertible Subordinated Capital Notes Due 1999.

### D. *The Unsecured Proofs of Claims*

The parties below stipulated that all of the claimants filed "proofs of claim as unsecured nonpriority claims, without the attachment of any supporting documents reflecting the assertion of any lien or security interest in the property of the debtor." Therefore, the Bankruptcy Court below found that none of the claimants held security for the repayment of the indebtedness under the indentures.

### E. *The Subordination Provisions*

Each of the five subordinated indentures contains an agreement to subordinate payments otherwise payable to junior debenture holders.[1] The parties do not dispute, and the Bankruptcy Court found that, although the express language of these subordination provisions may differ slightly from one indenture to another, the legal effect of the minor differences is immaterial to the determination of the issues presented on appeal. Essentially, at issue here are the provisions of the subordination agreements that state that upon the bankruptcy or liquidation of Southeast, distributions otherwise allocable to payment of the Subordinated Debt must be paid over to the Senior Trustee until the Senior Debt has been "paid in full."

### F. *The Decision of the Bankruptcy Court*

The Appellants commenced this adversary proceeding on September 23, 1994, arguing that the subordination agreements entitle them, as Senior Debenture holders, to payment of post-petition interest, interest on interest, and reimbursement of attorney's fees and costs from distributions otherwise payable to junior debenture holders. All parties subsequently moved for summary judgment. In addition, the Chapter 7 Trustee cross-moved for partial summary judgment concerning the liability of the insolvent estate, seeking a declaration from the Bankruptcy Court that if the Plaintiffs prevailed, the claims against Southeast would not increase as a result of the Bankruptcy Court's ruling.

The Bankruptcy Court granted in part and denied in part Appellants' and Appellees' motions for summary judgment and declared as moot the Trustee's motion for partial summary judgment. The Bankruptcy Court granted Appellants pre-petition attorney's

---

1. The subordination agreements are contained in Sections 4.03 and 1.01 of the 1972 Indenture, Sections 11.01 and 1.01 of the 1984 Indenture and the 1985 Indenture, and Sections 1301 and 101 of the 1987 Indenture and the 1989 Indenture. Those sections are set forth in the Appendix to this opinion. *See* Appendix.

fees and costs but rejected Appellants' demand for the payment of post-petition interest, compound interest, and post-petition fees and costs. Appellants now argue that the Bankruptcy Court erred in denying such recovery and request that the ruling of the Bankruptcy Court be reversed with regard to the issues of post-petition interest, compound interest, and post-petition attorney's fees and costs.

## LEGAL ANALYSIS

### A. Subordination agreements prior to the enactment of the Bankruptcy Code

Prior to the enactment of the Bankruptcy Code and Section 510(a), subordination agreements were enforced through the bankruptcy court's equitable powers. As long as the subordination agreements were lawful outside of the scope of bankruptcy, they would be upheld in a bankruptcy proceeding in order to "prevent junior creditors from receiving funds where they have 'explicitly agreed not to accept them.'" *Matter of Credit Indus. Corp.*, 366 F.2d 402, 410 (2d Cir.1966) (citation omitted). However, equitable concerns also led to a judicial limitation being placed on the enforcement of subordination agreements: as a general rule, interest on unsecured senior debt accruing after the filing of the bankruptcy petition would not be subordinated. *See Matter of King Resources Co.*, 528 F.2d 789 (10th Cir.1976); *In re Kingsboro Mortgage Corp.*, 514 F.2d 400 (2d Cir.1975); *Matter of Time Sales Fin. Corp.*, 491 F.2d 841 (3d Cir.1974).

■ It is not hard to discern the concerns underlying this rule. The general rule in bankruptcy is that interest stops accruing against the debtor upon the date of the filing of the petition of bankruptcy. *In re Ionosphere Clubs, Inc.*, 134 B.R. 528, 531 (Bankr. S.D.N.Y.1991) (citing *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 163, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946)). Thus, under a subordination agreement, interest on the senior debt that accrues after the petition date must be paid out of the potential distributions to the junior creditor. Owing simply to the protracted nature of bankruptcy proceedings, a junior creditor's

share of the recovery could be greatly reduced or eliminated while a senior creditor receives all of the recovery, more recovery in fact than the senior creditor would have been entitled to against the estate. *See 4 Collier on Bankruptcy* ¶ 510.03[3] (15th ed. revised 1996). This result has traditionally been thought to be unequitable in light of the longstanding bankruptcy principle that a court balance the equity not only between creditors and debtor but also between creditor and creditor, *see Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 165, 67 S.Ct. 237, 240, 91 L.Ed. 162 (1946), and "[c]ourts have uniformly ... prevent[ed] such a result." *4 Collier supra* at ¶ 510.03[3]. Thus, courts, in their equitable power, permitted the recovery of post-petition interest only when it was absolutely clear in the language of the debenture that the parties had contemplated and agreed to such a result. *See Kingsboro*, 514 F.2d at 401. This approach came to be known as the "rule of explicitness." *4 Collier supra* at ¶ 510.03[3] (15th ed. revised 1996); *In re Ionosphere Clubs, Inc.*, 134 B.R. 528 (Bankr. S.D.N.Y.1991). A rule of contract construction, the rule of explicitness places a heavy burden on the senior creditor to prove a clear and unambiguous intent in the debenture to subordinate post-petition interest.

### B. Section 510(a) of the Bankruptcy Code

As the *Ionosphere* court noted, "[s]ince the enactment of the Bankruptcy Code and Section 510(a), enforcement of subordination provisions is no longer solely an application of the court's equitable powers. It is mandated by statute." *Ionosphere*, 134 B.R. at 533. Indeed, "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206, 108 S.Ct. 963, 969, 99 L.Ed.2d 169 (1988).

■ Section 510(a) codifies the pre-Code rule that a subordination agreement is enforceable in a bankruptcy proceeding: "A subordination agreement is enforceable in a case under this title to the same extent that such agreement is enforceable under applica-

ble nonbankruptcy law." 11 U.S.C. § 510(a) (1993). The Appellants argue that Section 510(a) goes even further. In their view, it overrules the rule of explicitness and calls for a "bankruptcy neutral" enforcement of subordination agreements. Put simply, the Appellants interpret the phrase "enforceable to the same extent as under nonbankruptcy law" to mean enforceable as if the debtor had never gone bankrupt. And certainly, if the debtor were solvent, the senior debt holders would be entitled to be paid all principal and all interest to the date of payment before the junior debt holders received any distributions. Thus, the Appellants argue that the plain meaning of Section 510(a) calls for the subordination of post-petition interest and fees and costs even absent explicit language to that effect in the indenture.

The Appellants' plain meaning argument has superficial appeal. However, there is simply no support for the view that Section 510(a) works such a radical change in bankruptcy practice. To the contrary, the more plausible reading of Section 510(a) is that it in fact adopts the pre-Code treatment of subordination agreements:

> Section 510(a) states that a subordination agreement "is enforceable in a case under [title 11] to the extent that such agreement is enforceable under applicable non-bankruptcy law." *This statement comports with prior law. The reference to enforceability to the same extent as under applicable non-bankruptcy law imports all non-bankruptcy law defenses to the agreement.*

4 *Collier supra* at ¶ 510.03[2] (emphasis added). In other words, the language upon which the Appellants base their argument simply means that a party to a subordination agreement can, in a bankruptcy proceeding, challenge the subordination agreement on any grounds upon which it could challenge that agreement outside of bankruptcy practice (e.g., for lack of consideration, duress, failure to execute). This makes sense. After all, the rule of explicitness was developed to mitigate against the harsh results of enforcing subordination agreements. A statement making clear that an aggrieved junior creditor could challenge a subordination

agreement as he could any other contract is very much in the same spirit.

Moreover, Sections 502 and 506 of the Code make clear that in every other context, Congress intended to codify the well-settled bankruptcy practice that an unsecured creditor is not entitled to post-petition interest. Section 502(b)(2) states that a court will determine the amount of a creditor's claim "as of the date of the filing of the petition," and will allow such claim except to the extent that "such claim is for unmatured interest." 11 U.S.C. § 502(b)(2). Furthermore, Section 506 states that only an oversecured creditor can claim post-petition interest against an insolvent bankruptcy estate in connection with its claims. 11 U.S.C. § 506(b).

There is simply no evidence that Congress meant to deviate from that rule when it wrote Section 510(a). Certainly such a radical change would have generated some debate in the legislative history. To the contrary, a review of the legislative history of that section reveals no mention of the subject of the subordination of post-petition interest. *See* House Report No. 95–595, 95th Cong., 1st Sess. 359 (1977); Senate Report No. 95–989, 95th Cong., 2d Sess. 74 (1978). As the Supreme Court has stated:

> when Congress amends the bankruptcy laws, it does not write 'on a clean slate'.... This Court has been reluctant to accept arguments that would interpret the Code ... to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history.

*Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). Indeed, the Bankruptcy Code should be read to overrule past bankruptcy practice only when there is "a clear indication that Congress intended such a departure." *Pennsylvania Dep't of Public Welfare v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990). Contrary to the Appellants' protestations, Section 510(a) offers no such clear indication. The "party contending that legislative action changed settled law has the burden of showing that the legislature intended such a change." *Green v. Bock Laundry Machine Co.,* 490 U.S. 504, 521, 109

S.Ct. 1981, 1991, 104 L.Ed.2d 557 (1989). The Court concludes that the Appellants have failed to meet that burden.

To the contrary, what little authority exists on this issue is in accordance with this Court's reading of Section 510(a). First, in *Ionosphere*, the court concluded that the *Kingsboro* opinion and the rule of explicitness have survived the enactment of the Bankruptcy Code. *Ionosphere*, 134 B.R. 528, 534 (Bankr.S.D.N.Y.1991). Appellants contend that the *Ionosphere* court did not reach the issue of the interpretation of Section 510(a). This Court reads the *Ionosphere* opinion differently. It is true that the *Ionosphere* court noted that "one might argue that *Kingsboro* is inconsistent with Section 510(a)" and declined to enter into extensive discussion of that issue in light of the fact that the parties did not raise it. *Id.* at 533. However, the *Ionosphere* court did go on to state that "it is not clear to this Court that [*Kingsboro*] is inconsistent with Section 510(a)," *id.* at 534, and must have been sufficiently satisfied that such was not the case in order to conclude that "*Kingsboro* retains its validity and remains the controlling law in the Second Circuit." *Id.*

Finally, it is worth noting that various post-Code commentaries on bankruptcy and structured finance continue to cite the rule of explicitness as the principle governing the award of post-petition interest. *See, e.g., Structured Finance Techniques,* 50 Bus. Law. 527, 585 n. 80 (1995) ("Subordination agreements are enforceable in bankruptcy to the extent that they are enforceable under applicable nonbankruptcy law. 11 U.S.C. § 510(a) (1988). The senior creditor also would be entitled to recover post-petition interest prior to any distribution to the junior creditor *if the subordination provisions were carefully crafted to define as 'senor debt' post-petition interest.*") (emphasis added); Robin E. Phelan, Terry W. Conner, Joseph L. Kinsella, *Word Wars: Structuring and Documenting Secured Term Loans Under the Bankruptcy Code,* 427 PLI/Comm 127, 273–274 (1987) ("[I]t is important that senior creditors include in contractual subordination agreements *an express right to receive post-petition interest,* before any payments are made to the junior creditors.") (emphasis added); Robert M. Zinman, *Under the Spreading Bankruptcy: Subordinations and the Codes,* 2 Am. Bankr.Inst. L.Rev. 293, 335 (1994) ("Senior creditors have … been generally frustrated in their attempt to obtain post-petition interest (not available for unsecured or undersecured debt) out of the junior creditor's share *where the subordination agreement did not provide for subordination to post-petition interest by express provision* designed to apprise juniors of this fact.") (emphasis added). If nothing else, these commentaries make clear that even since the enactment of the Bankruptcy Code, parties to loan agreements still operate under the assumption that the rule of explicitness governs the subordination of post-petition interest in bankruptcy proceedings.

In short, there is no support for the Appellants' contention that Section 510(a) overrules the rule of explicitness and mandates the subordination of post-petition interest. In fact, all indications, including the more plausible interpretation of Section 510(a), are to the contrary. Mindful of the fact that the burden is on the Appellants to prove that in enacting the Bankruptcy Code Congress intended to change the pre-Code treatment of post-petition interest, the Court concludes that the rule of explicitness survives the enactment Section 510(a) and remains the controlling law.

## C. *The Rule of Explicitness and the Language of the Indentures*

■ Applying the rule of explicitness, it is clear from case law that the indentures at issue here provide insufficient notice to the junior creditors of the intent to subordinate post-petition interest. As the Bankruptcy Court below found, "[n]o fewer than three Courts of Appeals and the Bankruptcy Court for the Southern District of New York, applying the Rule of Explicitness, have unanimously rejected the precise claims pursued here by the Plaintiffs in cases involving virtually identical subordination language." *In re Southeast Banking Corp.,* 188 B.R. 452, 465 (Bankr.S.D.Fla.1995) (citing *Matter of King Resources Co.,* 528 F.2d 789 (10th Cir.1976); *In re Kingsboro Mortgage Corp.,* 514 F.2d 400 (2nd Cir.); *Matter of Time Sales Fin.*

*Corp.*, 491 F.2d 841 (3d Cir.1974); *In re Ionosphere Clubs, Inc.*, 134 B.R. 528 (Bankr. S.D.N.Y.1991)). The indentures at issue here make no mention of post-petition interest, despite the fact that they clearly contemplate the possibility of bankruptcy. This omission is particularly telling in light of the fact that the rule of explicitness existed well before at least four of the five indentures were written. Had the parties to the indentures intended the result that the Appellants seek, they could have easily provided for it in the subordination agreements.[2] Their failure to do so necessarily leads this Court to find that the right to post-petition interest is not clearly, explicitly, precisely, and unambiguously provided for in the indentures.

### D. *Post-Petition Attorney's Fees and Costs*

■ Having found that Section 510(a) works no major change in the bankruptcy treatment of post-petition interest, it follows that Section 510(a) similarly does not alter the treatment of post-petition attorney's fees and costs. Section 506(b) in conjunction with Section 502 authorizes an award of attorney's fees and costs incurred post-petition only to the extent that the claim is oversecured. 11 U.S.C. §§ 506(b) and 502. For the reasons discussed above, the Appellants have failed to show that Section 510(a) modifies those rules. Thus, the subordination of attorney's fees and costs should be allowed only if there is explicit language in the Indenture to that effect.

■ Section 5.2 of the Senior Indenture provides that the Senior Trustee is entitled to "such further amount as shall be sufficient to cover the costs and expenses of collection, including reasonable compensation to the Trustee and each predecessor trustee, their

respective agents, attorneys and counsel...." As the Bankruptcy Court below found, this general reference to the collection of fees and costs cannot be deemed an explicit notice to the junior creditors that their interests are subordinated to attorney's fees and costs incurred post-petition in the collection of the senior debt. *In re Southeast Banking Corp.*, 188 B.R. 452, 471 (Bankr. S.D.Fla.1995). Thus, this Court must affirm the Bankruptcy Court's ruling denying the recovery of post-petition attorney's fees and costs.

### E. *Compound Interest*

■ Finally, Appellants are not entitled to compound interest under New York law. At the time the indentures were entered into, New York law prohibited contractual provisions to pay compound interest. *In re Chateaugay Corp.*, 170 B.R. 551, 555 (S.D.N.Y.1994). Subsequently, the New York State Legislature enacted Section 5–527 of the New York General Obligations Law which now permits the enforceability of such provisions. See N.Y. Gen. Oblig. Law § 5–527 (McKinney Supp.1992). It is true, as the Appellants assert, that in New York "[w]hen there has been a repeal of a prohibitory statute, which had rendered invalid a contract violative of its provisions, such a repeal will render the contract valid and enforceable." *Goldfarb v. Goldfarb*, 86 A.D.2d 459, 461, 450 N.Y.S.2d 212, 214 (Sup. Ct.App.Div.1982). However, this is not the case of the repeal of a prohibitory statute. Rather, N.Y. Gen. Oblig. Law § 5–527 overrules a long line of case law. More importantly, in cases involving loan agreements nearly identical to the one at issue here, three separate courts in New York have held that Section 5–527 should not be applied

---

2. The Appellants argue that the rule of explicitness imposes an impossible burden on the Senior Creditors. Appellants' brief, p. 21. The court in *Ionosphere*, however, provided a clear example of the kind of language that would create a clear and explicit right to post-petition interest:

 Upon any distribution to creditors of the Company in a liquidation or dissolution of the Company or in bankruptcy, reorganization, insolvency, receivership, or similar proceeding relating to the Company or its property or in an assignment for the benefit of creditors or

any marshalling of assets and liabilities of the Company: (1) holders of the Senior Debt shall be entitled to receive payment in full of all Obligations with respect to the Senior Debt (including interest after the commencement of any proceeding at the rate specified in the applicable Senior Debt, whether or not such interest is an allowable claim in any such proceeding) before Securityholders shall be entitled to receive any payment of any Obligations with respect to the Securities....

*Ionosphere*, 134 B.R. 528, 535 n. 14.

retroactively. *See In re Basix Corp.*, 1996 WL 517667, *6 (S.D.N.Y.1996) ("While New York General Obligations Law § 5–527 now provides that '[a] loan or other agreement providing for compound interest shall be enforceable,' this law should not be applied retroactively."); *Pravin Banker Assoc. v. Banco Popular del Peru*, 912 F.Supp. 77 (S.D.N.Y.1996); *Chateaugay*, 170 B.R. at 551. As the *Pravin* court stated, "a statute should be applied only prospectively absent clear language directing its retroactive application." *Id.* at 83. This Court adopts the *Basix* holding that New York law prohibits the retroactive recovery of compound interest and applies it in this case.

## CONCLUSION

The judicial rule against the subordination of post-petition interest in unsecured claims absent express language to the contrary in the loan agreement evolved in order to prevent the inequitable treatment of junior creditors. The abolition of this rule would be a radical alteration in bankruptcy practice. The Appellants have simply failed to demonstrate that Congress intended such a change when it enacted Section 510(a) of the Bankruptcy Code. Such interpretation is not plausible, especially given the absence of any discussion of post-petition interest in the legislative history of Section 510(a). The more likely reading of that section is that it in fact codifies pre-bankruptcy Code practice. Given the long line of pre-Code case law supporting the ruling of the Bankruptcy Court and the lack of any indication that Section 510(a) overrules those cases, it would be unjudicious on the part of this Court to infer the radical change in bankruptcy practice that the Appellants seek. Therefore, the order of the Bankruptcy Court is AFFIRMED in its entirety.

## APPENDIX:

Section 4.03 of the 1972 Indenture, entitled "Priority of Senior Indebtedness Upon Maturity of Debentures or Distribution of Assets," provides in relevant part:

> Upon ... any payment or distribution of assets of the Company ... to creditors upon any dissolution or winding-up or total or partial liquidation or reorganization of the Company, whether voluntary or involuntary or in bankruptcy, all principal, premium, if any, and interest due or to become due upon all Senior Indebtedness shall first be paid in full ... before any payment is made on account of the principal or, premium, if any, or interest on the Debentures, and upon any such dissolution or winding-up or liquidation or reorganization, any payment ... to which the holders of the Debentures or the Trustee under this Indenture would be entitled shall be paid ... directly to the holders of Senior Indebtedness ... to the extent necessary to pay all Senior Indebtedness in full ... before any payment or distribution is made to the holders of the Debentures or to the Trustee under this Indenture.

Section 1.01 of the 1972 Indenture defines "Senior Indebtedness" in relevant part as follows:

> The term "Senior Indebtedness" shall mean (a) all indebtedness for money borrowed incurred by the company whether outstanding on the date of execution of this Indenture or thereafter created, assumed or incurred, except the 6% Convertible Subordinated Debentures due 1994 of the Company and such other indebtedness as is by its terms expressly stated to be not superior in right of payment to the Debentures, and (b) any deferrals, renewals or extensions of any such Senior Indebtedness, or debentures, notes or other evidence of indebtedness issued in exchange for such Senior Indebtedness.

Section 11.01 of both the 1984 Indenture and the 1985 Indenture, entitled "Agreement to Subordinate," provides in relevant part:

> The Company ... covenants and agrees, and each holder of a Note likewise covenants and agrees by his acceptance thereof, that the obligation of the Company to make any payment on account of the principal of and interest on each and all of the Notes shall be subordinate and junior in right of payment-to the Company's obligations to the holders of Senior Indebtedness of the Company, to the extent provided herein, and that in the cases of insolvency, receivership, conser-

vatorship, reorganization, readjustment of debt, marshalling of assets and liabilities or similar proceedings or any liquidation or winding-up of or relating to the Company as a whole, whether voluntary or involuntary, all obligations of the Company to holders of Senior Indebtedness of the Company shall be entitled to be paid in full before any payment shall be made on account of the principal of or interest on the Notes.... In addition, in the event of any such proceeding, if any payment or distribution of assets of the Company of any kind or character ... shall be received by the Trustee or the holders of the Notes before all Senior Indebtedness of the Company is paid in full, such payment or distribution shall be held in trust for the benefit of and shall be paid over to the holders of such Senior Indebtedness ... until all such Senior Indebtedness shall have been paid in full.

Section 1.01 of both the 1984 Indenture and the 1985 Indenture define "Senior Indebtedness of the Company" to mean:

(a) any indebtedness of the Company for money borrowed, whether outstanding on the date of execution of this Indenture or thereafter created, assumed, or incurred, other than the Notes....

Section 1301 of the 1989 Indenture, entitled "Agreement to Subordinate," is, for all relevant purposes, identical to Section 1301 of the 1987 Indenture. Those sections state, in relevant part:

The Company ... covenants and agrees, and each Holder of a Security likewise covenants and agrees by his acceptance thereof, that the obligation of the Company to make any payment ... on account of principal (and premium, if any) of and interest on each and all of the Securities shall be subordinate and junior in right of payment to the Company's obligations to the holders of Senior Indebtedness ... and ... in the case of any insolvency, receivership, conservatorship, reorganization, readjustment of debt, marshalling of assets and liabilities or similar proceedings or any liquidation or winding-up of or relating to the Company as a whole, whether voluntary or involuntary, all obligations of the Company, to holders of Senior Indebtedness of the Company shall be entitled to be paid in full before any payment ... shall be made on account of the principal of (and premium, if any) or interest on the Securities.... In addition, in the event of any such proceeding, if any payment or distribution of assets of the Company ... shall be received by the Trustee or the Holders of the Securities before all Senior Indebtedness of the Company is paid in full, such payment or distribution shall be held in trust for the benefit of and shall be paid over to the holders of such Senior Indebtedness ... for application to the payment of all Senior Indebtedness of the Company remaining unpaid until all such Senior Indebtedness shall have been paid in full.

Section 101 of the 1987 Indenture and 1989 Indenture defines "Senior Indebtedness" in relevant part as:

(a) any indebtedness of the Company for money borrowed, whether outstanding on the date of execution of this Indenture or thereafter created, assumed or incurred....