In re:  SOUTHEAST BANKING CORPORATION, Debtor.

Chemical Bank, as Indenture Trustee under the Indenture, stated as of March 1, 1983, of Southeast Banking Corporation, and Gabriel Capital, L.P., Plaintiffs-Appellants,

v.

First Trust of New York, National Association, as Indenture Trustee, The Bank of New York, as Indenture Trustee, and Southeast Banking Corporation, Debtor, Defendants-Appellees.

No. 97-4436.

United States Court of Appeals,

Eleventh Circuit.

July 1, 1999.

Appeal from the United States District Court for the Southern District of Florida. (No. 95-2045-CIV-FAM), Federico A. Moreno, Judge.

Before EDMONDSON and BIRCH, Circuit Judges, and FAY, Senior Circuit Judge.

BIRCH, Circuit Judge:

We summarize briefly the facts surrounding this bankruptcy proceeding.[1]  Southeast Banking Corporation ("Southeast") filed a voluntary bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code on September 20, 1991.  Appellant, The Chase Manhattan Bank ("Chase"), formerly Chemical Bank, is the indenture trustee (the "Senior Trustee") under an indenture agreement, pursuant to which Southeast issued $60 million in principal amount of unsecured notes (the "Senior Notes").  Appellant, Gabriel Capital, L.P. ("Gabriel") holds a substantial portion of the Senior Notes.  Appellees, First Trust of New York, N.A. and The Bank of New York (collectively the "Junior Trustees") are indenture trustees under five indentures (the "Subordinated Indentures") pursuant to which Southeast issued in excess of $300 million in principal amount of subordinated notes ("the Subordinated Notes").  Each of the Subordinated Indentures contains language that subordinates collection of the Subordinated Notes to the prior payment in full on the Senior Notes.  The

---

[1]A more extensive discussion of the procedural and factual history of this case can be found in our prior panel opinion, *In re Southeast Banking Corp.,* 156 F.3d 1114 (11th Cir.1998) ("*Southeast I* ").

Subordinated Indentures make no specific mention of the issue of post-petition interest or of the Senior

Trustee's fees and costs for collecting post-petition interest.

The bankruptcy court, *see In re Southeast,* 188 B.R. 452 (S.D.Fla.1995), denied the Senior Creditors'

(Chase and Gabriel) motion for summary judgment for (1) post-petition interest, (2) reasonable costs and fees,

including attorneys' fees, incurred after the petition date, and (3) for compound interest (interest upon the

post-petition interest). Payment of all claims would have come out of distributions otherwise payable to

holders of the Subordinated Debt (the "Junior Creditors"). The district court affirmed. *See In re Southeast,*

212 B.R. 682 (S.D.Fla.1997). Both the bankruptcy court and the district court based their holdings on the

doctrine of the "Rule of Explicitness," which, effectively, prevents a senior creditor from recovering

post-petition interest from junior creditors unless the subordination agreement articulates the obligation in

unusually express language.

In reviewing the opinion of the district court, we determined that section 510(a) of the Bankruptcy

Code, directing that subordination agreements should be enforced according to applicable nonbankruptcy law,

"required us to enforce and interpret the subordination clause in the Subordinated Indentures under New York

law." *Southeast I,* 156 F.3d at 1125. After ascertaining that New York courts had not had the opportunity

to determine what kind of language would be necessary to put a junior creditor on notice regarding the risk

of subordinating a debt to senior creditors' claims for post-petition interest and post-petition fees and costs,

we certified the following question to the State of New York Court of Appeals.

> What, if any, language does New York law require in a subordination agreement to alert a junior
> creditor to its assumption of the risk and burden of the senior creditor's post-petition interest?

*Id.*

After reviewing the facts of the case and our prior panel opinion, the State of New York Court of

Appeals has answered the question as follows:

> For the purposes of answering the particular question posed to us, we are confined by key
> features of the Eleventh Circuit's ruling. Nevertheless, we face up to whether New York should
> adopt its version of the Rule of Explicitness as a guiding interpretive principle of State contract

2

dispute resolution in cases such as this. In doing so, we are acutely cognizant of the practical effect that our answer to the certified question will have on a vast sea of subordination agreements not before us now in live cases or controversies, nor even within the framework of this Eleventh Circuit litigation, involving enormous sums of outstanding public debt. Indeed, while it is not our forum's role to rule ultimately on the subordination agreements at issue in this case, we recognize that they and many others were drafted and entered into before the Rule of Explicitness was called into question by the ruling of the Eleventh Circuit in the instant case.

This practical policy consequence is a matter of legitimate concern in the common law developmental process, especially with respect to commercial matters where reliance, definiteness and predictability are such important goals of the law itself, designed so that parties may intelligently negotiate and order their rights and duties. Parties to subordination agreements undoubtedly relied on the Rule—their lawyers would have been quite remiss had they not—since recent case law, as well as a leading authority and many commentators have consistently recognized the continued vitality of the Rule [citations omitted].

In addition to practical realities, however, we are persuaded that the commercial and legal policies underlying the Rule of Explicitness remain sound and relevant. The general rule in bankruptcy is that interest stops accruing against a debtor upon the date of filing of a petition (*see, Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 163, 67 S.Ct. 237, 91 L.Ed. 162 (1946); 11 USC § 502[b][2] ). This rule recognizes that post-petition delay in distribution by a debtor "results by operation of law and prevents creditors from profiting or suffering a loss in relation to each other because of the delay" (*Chemical Bank v First Trust, N.A. [In re Southeast Banking Corp.*], 156 F.3d 1114, 1119, citing *Vanston Bondholders Protective Comm. v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162, *supra* ).

The Rule of Explicitness evolved as an equitable principle of contract construction in Federal common law to rectify the perceived inequity that results when, pursuant to a subordination agreement, a junior creditor's potential distributions go first to satisfy post-petition interest of a senior creditor (*Chemical Bank v. First Trust, N.A. [In re Southeast Banking Corp.*], 212 B.R. 682 [S.D.Fla.1995] ). If a senior creditor is allowed to recover post-petition interest from a subordinated creditor, a senior creditor could end up receiving more recovery than it would have been entitled to against the debtor, while the subordinated creditor's recovery is proportionately diminished (4 Collier on Bankruptcy § 510.03[3], *supra* ). Because this consequence violates the general rule against entitlement to post-petition interest, courts until now have consistently required that the language of the instrument make absolutely clear that a subordinated creditor intended also to subordinate post-petition interest entitlements (*see, In re King Resources Co.,* 528 F.2d 789 (10th Cir.1976), *supra; In re Kingsboro Mtge. Corp.,* 514 F.2d 400 (2nd Cir.1975), *supra; In re Times Sales Fin. Corp.,* 491 F.2d 841 (3rd Cir.1974), *supra; In re Ionosphere Clubs,* 134 B.R. 528 (1991), *supra* ).

The 1978 revisions to the Bankruptcy Code did not change the general rule that creditors are not entitled to post-petition interest. Thus, considerations underlying the Rule of Explicitness survive. Indeed, they echo the policies underlying *Matter of Pavone Textile Corp. v. Bloom* (302 N.Y. 206, 97 N.E.2d 755 (1951), *affd* 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682).

*Pavone* provides an analytical counterpart and precedential building block for our recognition of the applicability of the Rule of Explicitness to the instant controversy. In *Pavone,* the assignor made a general assignment for the benefit of creditors pursuant to article 2 of the Debtor and

3

Creditor Law. This Court noted the general rule that creditors are not entitled to post-assignment interest because the " 'delay in distribution is the act of the law; ... a necessary incident to the settlement of the estate' " (*id.,* at 210, quoting *Thomas v. Western Car Co.,* 149 U.S. 95, 116-117, 13 S.Ct. 824, 37 L.Ed. 663 (1893)). Construing the general rule as applying to Social Security, withholding and unemployment insurance tax claims, the Court disallowed claims by the United States and the State of New York for post-assignment interest. The State of New York, one of the preferred creditors, sought to trump the general rule by relying on Labor Law § 574, which provides that the State's priority as to unemployment insurance contributions includes "any interest ... thereon" (*id.,* at 212). The Court held that this language did not supersede the general rule: "the general rule as to post-assignment interest prevails in the absence of any statute *expressly* providing for such interest" (*id.,* at 213 [emphasis supplied] ). The parallel construction and application are reasonable to carry over to the instant certified question concerning New York contract law insofar as it controls or impacts upon the underlying dispute in the Federal courts.

In *Pavone,* this Court refused to undercut reliance by parties on the general rule that creditors are not entitled to post-assignment interest in the absence of express statutory language. In like fashion, the Rule of Explicitness safeguards reliance by parties on the analogous general rule that creditors are not entitled to post-petition interest in bankruptcy proceedings absent express language to that effect in subordination agreements ordering priorities among the contracting parties.

This court is, therefore, satisfied for purposes of answering this question—in the spirit of comity but also within the usual certification constraints, as well as within the confines of interrelated threshold rulings already made by the Eleventh Circuit—that, in our "common-law interstitial developmental process" (*Rooney v. Tyson,* 91 N.Y.2d 685, 694, 674 N.Y.S.2d 616, 697 N.E.2d 571), this Court can and should recognize the Rule of Explicitness.

Accordingly, the certified question should be answered as follows: *In accordance with the Rule of Explicitness, New York law would require specific language in a subordination agreement to alert a junior creditor to its assumption of the risk and burden of allowing the payment of a senior creditor's post-petition interest demand.*

*In the Matter of Southeast Banking Corp.,* (emphasis added).

Based on the New York Court of Appeals' opinion in this case, New York law applies the Rule of Explicitness to subordination agreements. We return, therefore, to our prior panel's determination that

we find it beyond question that the subordination language in the indenture agreements in this case, which requires "payment in full" without any specific reference to post-petition interest, is insufficiently "precise, explicit and unambiguous" on the topic of post-petition interest to satisfy the Rule of Explicitness.

*Southeast I,* 156 F.3d at 1120

As a result, we conclude that the district court was correct in the portion of its opinion affirming the

bankruptcy court's holding that Chase and Gabriel may not claim post-petition interest or reasonable costs

4

or fees for prosecuting this action because the right to post-petition interest, fees, or costs is not "clearly, explicitly, precisely, and unambiguously provided for in the indentures." 212 B.R. at 689.[2] Because appellants have not succeeded in their claim for post-petition interest, we need not address whether the recent changes in New York law would require enforcement of contracts for compound interest.

AFFIRMED.

FAY, Senior Circuit Judge, concurring specially:

I concur in the result finally reached in this matter, which is an affirmance of the rulings made by the bankruptcy court and the district court. I continue to dissent from the abolishment of the "Rule of Explicitness" announced by the majority in *Southeast I,* 156 F.3d 1114 (11th Cir.1998) for the reasons stated. My dissent is reinforced by the opinion of the State of New York Court of Appeals, which states:

> The 1978 revisions to the Bankruptcy Code did not change the general rule that creditors are not entitled to post-petition interest. Thus, considerations underlying the Rule of Explicitness survive. Indeed, they echo the policies underlying *Matter of Pavone Textile Corp. v. Bloom* (302 N.Y. 206, 97 N.E.2d 755, *affd* 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682).

*In re Matter of Southeast Banking Corp.,* 93 N.Y.2d 178, 688 N.Y.S.2d 484, 710 N.E.2d 1083 (N.Y.1999).

The Rule of Explicitness is a sound, long-established rule and Congress has not explicitly eliminated it. The Rule has been relied upon by those in the financial world. It's abolishment can have enormous consequences. I, therefore, most respectfully, urge the *en banc* court to consider this issue when appropriate.[1]

---

[2]To further clarify our decision, we note that the district court opinion was incorrect in concluding that under bankruptcy law, the Rule of Explicitness survives the enactment of section 510(a) of the Bankruptcy Code. Rather, we must look to the "applicable nonbankruptcy" law to determine the extent to which a subordination agreement is enforceable. In this case, we determined that the applicable nonbankruptcy law is the law of New York. *See Southeast I,* 156 F.3d at 1121. We apply the Rule of Explicitness here because New York law, not the Bankruptcy Code, requires us to do so. We affirm, therefore, the final result reached by the district court, but we maintain our previous rejection of the reasoning of the district court to reach that result.

[1]Since the Appellees-Trustees have prevailed in this matter, I recognize the difficulty of a prevailing party petitioning for *en banc* consideration.